**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIE PRESTON and BRITTANY** | ) | |
| **BAILEY,** | ) | |
| **Plaintiffs,** | ) | **Case No. 14 C 3423** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **BOARD OF TRUSTEES OF CHICAGO** | ) | |
| **STATE UNIVERSITY, WAYNE** | ) | |
| **WATSON, ANGELA HENDERSON,** | ) | |
| **PATRICK CAGE, MATOYA MARSH,** | ) | |
| **and RONNIE WATSON,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Willie Preston and Brittany Bailey sued Chicago State University ("CSU") raising numerous federal constitutional and state law claims against CSU's Board of Trustees and officials based on the defendants' response to their on-campus activism. The defendants seek to dismiss the complaint based on allegedly fraudulent misrepresentations in the plaintiffs' affidavits supporting their requests to proceed without paying the filing fee. Alternatively, the defendants seek to dismiss most of the complaint based on Eleventh Amendment immunity, the *Younger* abstention doctrine, and for failure to state a claim for which relief may be granted. For the following reasons, the motion to dismiss based on fraud is denied and the remainder of the motion is granted in part and denied in part as detailed below.

### I. BACKGROUND

The following facts are drawn from the plaintiffs' complaint and are accepted as true for the purpose of the defendants' motion to dismiss.

## A.     The Parties

Plaintiffs Willie Preston and Brittany Bailey attending CSU in 2010.  At all relevant times, they were either dating or married.  Preston was expelled at the end of 2013.  Bailey appears to be a current student.

Defendant Wayne Watson served as President of CSU while the plaintiffs were students at CSU.  Defendant Angela Henderson began to serve as CSU's Interim Provost and Senior Vice President for Academic Affairs in 2013.  Defendant Patrick Cage is CSU's Vice President for Labor and Legal Affairs and General Counsel for CSU.  He oversees the Student Judicial Affairs Office.  In 2012, defendant Matoya Marsh began working as CSU's Director of Student Activities & Leadership.  Defendant Ronnie Watson is the Chief of CSU's Police Department.

## B.     The Plaintiffs' Allegations

While they were students at CSU, the plaintiffs engaged in on-campus activism to criticize various policies in place at CSU and actions taken by Watson and other CSU officials. In addition, the plaintiffs were elected to roles in CSU's student government system.  The plaintiffs' twenty-nine pages of factual allegations detail their belief that CSU officials retaliated against them based on their exercise of their First Amendment rights, "including instituting disciplinary actions against them, invalidating the results of elections they won, arranging their arrest and criminal prosecution, and expelling . . . Preston from the University."  (Dkt. 1 at ¶ 2.) The plaintiffs assert claims against Watson, Cage, Henderson, and Marsh in their individual capacities for deprivation of First Amendment rights and retaliation (Count I).  They assert the same theories against all individual defendants in their official capacities (Count II).  They also assert a Fourteenth Amendment claim against the individual defendants in their individual and

official capacities (Count III). Next, they assert that CSU's Board of Trustees, Watson, Cage, Henderson, and Marsh violated the Illinois State Officials and Employees Ethics Act (Count IV), CSU's Board of Trustees, Watson, Henderson, and Marsh violated the Illinois Campus Press Act (Count V), and all of the defendants violated the "Illinois State University Law" and the "Chicago State University Law" (Count VI). Finally, they contend that CSU (presumably CSU's Board of Trustees, as that entity is a party to this action) breached a contract by violating policies in the CSU student handbook that govern the expression of ideas (Count VII).

**C.     The Plaintiffs' Fee Status**

The plaintiffs (through counsel) paid the $400 filing fee when they filed their complaint in May 2014. In July 2014, they filed a motion for leave to proceed in forma pauperis ("IFP") and for reimbursement of the filing fee to their counsel. The plaintiffs asserted that their counsel paid the fee with the intention of seeking reimbursement and submitted financial affidavits in support of their motion. The court found that payment of the fee would constitute a "significant hardship" on the plaintiffs since they are unemployed and receive under $7,000 per year in welfare benefits. (Dkt. 12.) It thus granted the plaintiffs' IFP motion and refunded the filing fee.

The defendants subsequently filed a motion to dismiss pursuant to 28 U.S.C. § 1915(e)(2)(A) based on IFP fraud. This motion was based on the defendants' discovery, via an online search, that the plaintiffs had received almost $2,000 in donations for their "legal fund" made through the crowdfunding site "www.gofundme.com." (Dkt. 15 at 2.) The plaintiffs website asks for donations "so [their] attorneys can continue to subpoena, file motions, retain their private investigators, etc." (Dkt. 15-1, Ex, A & B.) The plaintiffs had not disclosed these assets in their IFP affidavits, despite questions asking if they had received "gifts" or assets from

"any source."  In their response to the motion to dismiss, the plaintiffs state that when they signed their IFP affidavits, they had just started to receive donations and that those donations were "not even close to being sufficient to cover legal fees."  (Dkt. 18.)  They also assert that they were never (whether at the time they filed suit or now) able to pay the filing fee and that their counsel paid the fee and received the refund.  According to the plaintiffs, their counsel believed that the IFP affidavit required disclosure of assets and income, not donations for legal fees that the plaintiffs were not entitled to retain for personal use.

Presumably due to the motion to dismiss, the plaintiffs filed amended IFP affidavits that disclose that on the date of filing (September 26, 2014), they had collected $1,841.98 in donations for attorney's fees, which they paid to their counsel.  In response, the defendants filed a supplement to their motion to dismiss arguing that the amendments were too little, too late to rectify the plaintiffs' alleged IFP fraud.  Specifically, the defendants assert that nothing requires the plaintiffs to use the donations for attorneys' fees and stress that the plaintiffs' crowdfunding site asked for donations to cover attorney's fees as well as costs, such as the retention of private investigators.  According to the defendants, the filing fee is a cost that the plaintiffs could have paid using donated funds.  Finally, the defendants vigorously argue that the donations should have been disclosed in the section of the IFP form requiring disclosure of gifts.

## II.  ANALYSIS

The defendants seek to dismiss the plaintiffs' complaint based on alleged IFP fraud. They also raise multiple alternative arguments.  First, they contend that the Eleventh Amendment bars the plaintiffs' state law claims against the Board of Trustees and the official capacity claims against the individual defendants.  Second, they argue that the plaintiffs' request

for this court to reverse or dismiss state court criminal proceedings against Preston should be rejected pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Third, they argue that Counts III (Fourteenth Amendment due process), Count IV (Illinois State Officials and Employees Ethics Act), Count VI (the "Illinois State University Law" and the "Chicago State University Law") and Count VII (breach of contract) must be dismissed as these counts fail to state a claim for which relief may be granted. As discussed below, the court declines to dismiss the complaint based on purported IFP fraud. The remainder of the motion to dismiss is granted in part and denied in part as specified below.

**A.      Motion to Dismiss – Alleged IFP Fraud**

      **1.      Legal Standard for a Motion to Dismiss Pursuant to 28 U.S.C.**
          **§ 1915(e)(2)(A)**

"The opportunity to proceed in forma pauperis is a privilege provided for the benefit of indigent persons and the court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung v. Dushane*, No. 03 C 5955, 2003 WL 22902561, at *2 (N.D. Ill. 2003) (citing *Denton v. Hernandez*, 504 U.S. 25, 27 (1992)). Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(A), "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the [plaintiff's] allegation of poverty is untrue." This provision mandates dismissal when a plaintiff's IFP application contains material and false information supporting a finding of poverty but the plaintiff is not indigent. *See Palmer v. Dollar Tree*, No. 10 C 7340, 2012 WL 4795720, at *3-4 (N.D. Ill. Oct. 9, 2012); *see also Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (holding that if "the allegation of poverty was false, the suit had to be dismissed; the judge had no choice"); *cf. Chriswell v. Big Score Entm't., LLC*, No.

11 C 861, 2013 WL 3669074, at *4 (N.D. Ill. July 12, 2013) (holding that dismissal is not mandatory if the misstated or omitted assets on an IFP application do not affect the plaintiff's "overall allegation of poverty").

Courts may dismiss cases under § 1915(e)(2)(A) with or without prejudice. *Thomas*, 288 F.3d at 306-07. If the court determines, in the exercise of its discretion, that a lie is sufficiently egregious, it may impose the sanction of dismissal with prejudice. *See id*. (affirming dismissal with prejudice based on a misrepresentation in an IFP application about expected future income). Thus, when evaluating whether to dismiss with prejudice based on a false allegation of poverty, courts consider the magnitude of the falsehoods and whether the falsehoods were intentional or inadvertent. *See id*. at 308; *see also Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 940 (N.D. Ill. 2007) (holding that "to dismiss without prejudice where an applicant intentionally lies on an IFP form would encourage the very perjury Congress sought to deter in § 1915").

### 2.    Disclosure of the Crowdfunding Website

The court finds that the explanation provided by the plaintiffs – that the donations were intended to reimburse their counsel for monies expended in this case as opposed to a gift that the plaintiffs could spend at their discretion – is easily sufficient to withstand the motion to dismiss. The plaintiffs are ultimately responsible for the payment of the filing fee. When the court reviewed their original IFP motions, it considered whether they "would be unable to pay the costs of commencing this action and still provide for [themselves] and for [their] dependents the'"necessities of life.'" *Robinson v. Tenn. Bd. of Prob. and Parole*, No. 10 C 0572, 2010 WL 2757266, at *1 (E.D. Wis. July 13, 2010) (quoting *Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 260 (7th Cir. 1987)).

It appears that as of the time that the plaintiffs signed their original IFP affidavits, the amount of donated funds modestly exceeded the amount of the filing fee. This fact does not affect the plaintiffs' "overall allegation of poverty." *See Chriswell*, 2013 WL 3669074, at *4. Whether the plaintiffs (who have five dependents) had the approximately $7,000 in income that they disclosed or had that amount plus all or some of the approximately $1,900 in donations, they are still indigent.

Moreover, while the defendants contend that when the plaintiffs sought leave to proceed IFP, they had donated assets from which they could have paid the filing fee, the plaintiffs assert that they did not disclose the donations based on counsels' advice that they were not required to do so since the donations were not available for their personal use. The court cannot characterize this decision as an intentional effort to mislead the court about the plaintiffs' financial status.

In any event, even if the crowdfunding request for donations allowed the plaintiffs to use donated funds to pay the filing fee (an issue which the court need not reach), the potential availability of donated funds to cover the filing fee does not warrant dismissal. As noted above, a plaintiff seeking leave to proceed IFP must demonstrate in an affidavit that his poverty prevents him from simultaneously paying the administrative fees to commence his lawsuit and providing the necessities of life for himself and his dependents. *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980). While a plaintiff must be indigent to obtain IFP status, he "need not be absolutely destitute in order to enjoy the benefit of § 1915." *Id*. Given the plaintiffs' overall financial status, the fact that they were able to obtain a modest amount of donated funds for the

purpose of defraying their attorneys' fees and costs does not alter the fact that they are, and remain, indigent. The motion to dismiss based on purported IFP fraud is denied.

**B.      Motion to Dismiss – Eleventh Amendment**

Pursuant to state statute, CSU and its Board of Trustees are considered arms of the State of Illinois. 110 ILL. COMP. STAT. § 220/2. Under the Eleventh Amendment, a state and its agencies have immunity against federal lawsuits unless the state consents to the suit or Congress abrogates its immunity. *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). There is no exception to state sovereign immunity for § 1983 claims. *Quern v. Jordan*, 440 U.S. 332 (1979). The plaintiffs do not contend that the Board is liable for any alleged federal constitutional violations. The plaintiffs, however, contend that their state law claims against CSU's Board of Trustees are not barred by the Eleventh Amendment. The court thus turns to the parties' arguments about the Eleventh Amendment that relate to the plaintiffs' state law claims.

**1.      Count VI ("Illinois State University Law" and "Chicago State University Law") and Breach of Contract (Count VII)**

With respect to Count VI ("Illinois State University Law" and "Chicago State University Law"), the plaintiffs concede that their claims against CSU's Board of Trustees and their official capacity claims against the individual defendants are barred by the Eleventh Amendment. (Dkt. 18 at 11.) They also agree to dismissal of their breach of contract claim against CSU (Count VII, which is presumably directed at CSU's Board of Trustees).[1] (*Id.* at 12.)

_____

[1] The plaintiffs agree to the dismissal of their breach of contract but ask the court to allow the factual allegations in that count to remain, contending that these allegations are relevant to their due process claim. The defendants oppose this request and assert that the plaintiffs should be required to file an amended complaint. As detailed in subsequent portions of

-8-

## 2. Official Capacity Claims that Request Relief that is Neither Prospective Nor Injunctive

While the Eleventh Amendment generally bars suits against officials in their official capacities, there are exceptions to this rule. "One exception occurs when the suit is filed against a state official, in her official capacity, claiming a violation of federal or constitutional law and seeking only prospective injunctive relief that does not include money damages." *Am. Soc'y of Consultant Pharm. v. Patla*, 138 F.Supp.2d 1062, 1068 (N.D. Ill. 2001) (citing *Papasan v. Allian*, 478 U.S. 265, 276-78 (1986)); *McDonough Ass'n, Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013) (holding that "courts may enjoin ongoing behavior by state officials that violates federal law"). In other words, the Eleventh Amendment does not bar an official capacity suit where the only relief sought is prospective injunctive relief directed at an alleged violation of federal or constitutional law.

In contrast, money damages are not allowable because "[a] suit for [money] damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes." *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). However, money damages that are "ancillary" to – that is, necessary to effectuate – injunctive relief are not barred by the Eleventh Amendment. *Patla*, 138 F. Supp. 2d at 1069 (noting that there is a distinction between "an award of retroactive money damages, which are expressly prohibited, and prospective monetary consequences on the state treasury that may flow from the injunctive relief granted, which are not barred by the Eleventh Amendment").

---

this opinion, the plaintiffs must file an amended complaint. When they do so, they can move the factual allegations from the now-defunct breach of contract count as desired. Thus, the request to allow factual allegations to remain is denied.

The plaintiffs argue that they have sought only prospective injunctive relief. The defendants contend that they have not sought to dismiss requests for prospective injunctive relief but that the plaintiffs' requests for back-pay (presumably from campus jobs) and monetary compensatory damages, such as lost tuition, are barred. The plaintiffs' verbose and, at times, argumentative 36-page complaint makes it challenging to parse out the precise contours of their claims. It is clear, however, that despite their current contention that they only seek prospective injunctive relief against individual defendants in their official capacities, they have requested monetary damages. All official capacity claims against the defendants other than those seeking prospective injunctive relief are dismissed. If the plaintiffs believe that any of their monetary claims fall into an exception to the general rule requiring dismissal of monetary claims, they must seek leave to file an amended complaint and explain why they believe that these claims are proper.

### 3. Official and Individual Capacity Claims that Request Prospective Injunctive Relief Relating to Alleged Violations of State Law

As discussed above, the exception to Eleventh Amendment immunity allows a federal court to enjoin ongoing actions by state officials that violate federal – not state – law. *See McDonough*, 722 F.3d at 1050. Thus, the defendants ask the court to dismiss any official capacity claims that request prospective injunctive relief based on alleged violations of state law. The court thus considers the plaintiffs' requests for relief under the Illinois Ethics Act and the Illinois Campus Press Act.

### a.   Ethics Act (Count IV)

The plaintiffs contend that the CSU Board of Trustees (or, possibly, CSU, although it is not a party to this action), as well as Watson, Cage, Henderson, and Marsh, violated the Illinois State Officials and Employees Ethics Act.  *See* 5 ILL. COMP. STAT. § 430/1-1.  To the extent that the plaintiffs seek any relief against CSU, it is not a party.  To the extent that the plaintiffs seek injunctive relief against CSU's Board of Trustees, the court has already held that injunctive relief is available only based on alleged violations of federal law.  To state the obvious, the Illinois Ethics Act is not a federal law.  Moreover, the State has not waived its immunity to federal court suits under the Ethics Act.  *See* 5 ILL. COMP. STAT. § 430/15-25 ("The circuit courts of this State shall have jurisdiction to hear cases brought under this Article.").  Thus, the Eleventh Amendment bars the official capacity claims based on the Ethics Act.

To the extent that the plaintiffs seek relief under the Ethics Act against individual defendants in their individual capacities, the defendants argue that these claims are really claims against the state and as such, must be dismissed.  This argument is based on the fact that the plaintiffs request monetary compensation for backpay and lost tuition.  According to the defendants, this relief necessarily must come from CSU and, in any event, regardless of the nomenclature used by the plaintiffs, their Ethics Act claims are barred because they are based on actions taken in the individual defendants' official capacities.  The court disagrees with both contentions.

First, a plaintiff  may obtain damages against a defendant sued in his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).  As the Supreme Court has noted, "imposing personal liability on state officers may hamper their performance of public duties.  But such concerns are

properly addressed within the framework of our personal immunity jurisprudence." *Id.* at 31.

Second, an act is not necessarily taken in a defendant's official capacity merely because the

defendant was in a position to act due to his employment with the State. Instead, the court must

consider "whether the plaintiff alleges 'that an agent or employee of the State acted beyond the

scope of his authority through wrongful acts,' and whether 'the complained-of actions involve

matters ordinarily within that employee's normal and official functions of the State.'" *Turpin v.*

*Koropchak*, 567 F.3d 880, 883-84 (7th Cir. 2009) (quoting *Healy v. Vaupel*, 133 Ill.2d 295, 309

(Ill. 1990)). The plaintiffs have alleged that the individual defendants exceeded the scope of

their authority when they took the numerous wrongful acts detailed in the complaint. Discovery

may belie these individual capacity claims against Watson, Cage, Henderson, and Marsh but

they are sufficient to survive the motion to dismiss.

### b.      College Campus Press Act (Count V)

Section 20 of the College Campus Press Act is entitled "Injunction and declaratory

relief" and provides, in pertinent part, that:

> A collegiate student enrolled in a State-sponsored institution of higher learning or
> a collegiate media advisor of a State-sponsored institution of higher learning may
> commence a civil action to obtain appropriate injunctive and declaratory relief as
> determined by a court for violation of Section 10 of this Act by such
> State-sponsored institution of higher learning.

110 ILL. COMP. STAT. § 13/20.[2]

---

[2]  Section 10 provides that, "All campus media produced primarily by students at a
State-sponsored institution of higher learning is a public forum for expression by the student
journalists and editors at the particular institution. Campus media, whether campus-sponsored or
noncampus-sponsored, is not subject to prior review by public officials of a State-sponsored
institution of higher learning." 110 ILL. COMP. STAT. § 13/10.

On its face, this section does not allow relief against individuals in their individual capacities.  *See Moore v. Watson*, 838 F. Supp. 2d 735, 739 (N.D. Ill. 2012).[3]  Thus, these claims are dismissed.  Moreover, the State has not consented to be sued in federal court based on the Press Act.  *Id*. at 754.  To the extent that the Press Act contains a general consent to suit, that "is insufficient to demonstrate that the state consented to suit in federal court."  *Id*.  The Press Act claim is dismissed.

On a related note, the plaintiffs' fourth request for relief appears to be based on their Press Act claim as it seeks "[i]njunctive relief reestablishing an uncensored student-run newspaper."  (Dkt. 1, p.35 ¶ 4.)  The court strikes this request for relief in light of the disposition of the Press Act claim.

## C.     Motion to Dismiss – *Younger* Abstention

The plaintiffs seek an order enjoining "further arrest and criminal prosecution for speaking critically against CSU administrators' practices, including arrest and threats of arrest when no criminal activity is alleged."  (Dkt. 18 at 14.)  They also seek a "declaration" that the defendants violated the First Amendment by disciplining the plaintiffs and retaliating against them by causing them to be arrested and criminally prosecuted in state court.  There is a fundamental problem with these requests:  they appear obliquely in the general factual allegations of the complaint (as the plaintiffs challenge the state court criminal proceedings brought against Preston) and more specifically in the request for relief at the end of the complaint.  However, this relief is not mentioned in any counts.  Thus, it is a floating concept

---

[3]  This is not an Eleventh Amendment argument, but the court will include it in this section in the interests of clarity.

that is not tied to any specific claim for relief. As such, the request for an order directed at the state court criminal proceedings is dismissed with leave to replead.

To aid the plaintiffs as they draft their amended complaint, the court notes that in *Younger*, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury. 401 U.S. at 44. This rule is based on the principle that federal courts should refrain from interfering with state criminal prosecutions because of "the notion of 'comity,' that is, a proper respect for state functions." *Id*. The Supreme Court, however, recognized an exception for a situation where criminal proceedings are brought not "with any expectation of securing valid convictions, but rather [as] a part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters" from First Amendment speech. *Id*. at 48 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965)). If "defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights" because "a substantial loss of or impairment of freedoms of expression will occur" if an individual must await the conclusion of state court proceedings, *Younger*'s bar against enjoining state court criminal proceedings may not apply. *Id*. at 48-49.

The *Dombrowski* exception recognized in *Younger* does not apply when the defendant in the state court case has an available state court remedy. *SKS & Associates, Inc. v. Dart,* 619 F.3d 674, 680-81 (7th Cir. 2010). Available remedies include asking the state court to consider a federal constitutional claim. *Id*. at 680 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (reversing lower courts' failure to apply *Younger* abstention where the federal plaintiff had not tried to present its federal constitutional claims to state courts)). Indeed, "when a litigant

-14-

has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15. Thus, the mere invocation of the First Amendment right to free speech is not enough to avoid abstention pursuant to *Younger*.

## D. Motion to Dismiss – Failure to State a Claim

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### 2. Fourteenth Amendment Due Process (Count III)

In Count III, the plaintiffs allege that disciplinary actions taken against them, including restrictions on their ability to participate in campus politics, violate their right to due process. They also claim that state criminal proceedings against them violate their right to due process. The court construes these allegations as procedural due process claims. "A procedural due process violation occurs when (1) conduct by someone acting under the color of state law; (2)

deprives the plaintiff of a protected property interest; (3) without due process of law." *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011). The parties dispute whether the plaintiffs have a protected right to education at a state university, to conduct an election campaign for a campus government position, or to avoid criminal prosecution.

There is no "stand-alone property interest in an education at a state university." *Charleston v. Bd. of Trustees of Univ. of Ill. at Chicago*, 741 F.3d 769, 772-73 (7th Cir. 2013). Instead, the court considers "whether the student has shown that he has a legally protected entitlement to his continued education at the university." *Id.* (citing *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 601-02 (7th Cir. 2009). A plaintiff may satisfy this standard "by pleading the existence of an express or implied contract." *Id.* It is insufficient, however, "for a student to merely state that . . . an implied contract existed." *Id.* at 603. "Instead, the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.*; *Bissessur*, 581 F.3d at 602 ("the student must point to an identifiable contractual promise that the [institution] failed to honor").

To satisfy this requirement, the plaintiffs first point to a provision in CSU's Code of Conduct that states that CSU:

> . . . is a community where the means of seeking truth are open discussion, free discourse, spirited debate and peaceful dissent. Free inquiry is indispensable to the purposes of the University and should be protected as a matter of academic freedom within the institution. Accordingly, conditions must exist which allow and encourage this freedom for all students. No students or group of students, regardless of moral impetus, sincerity, or conviction has the right to limit or abrogate this freedom or prevent in any way the peaceful and lawful pursuits of other students.

(Dkt. 1 at ¶ 203.)  A provision that voices the belief that students may not infringe on the right of other students to voice their opinions does not create the due process right asserted in this lawsuit.  *See Charleston*, 741 F.3d at 772-73.

Second, the plaintiffs argue that the Code of Conduct contains other provisions that support their due process claim.  In support, they state that "some of [these policies] are cited to in other parts of Plaintiffs' Complaint."  (Dkt. 18 at 5, n.2.)  General references to a college's policies are insufficient to identify a property interest.  *See DiPerna v. Chic. School of Professional Psychology*, No. 14 C 57, 2014 WL 4167491, at *3 (N.D. Ill. Aug 21, 2014).  Moreover, given the prolix nature of the plaintiffs' complaint, the court declines to search out quotes to the Code of Conduct and then attempt to tie them into the plaintiffs' arguments about due process.  Thus, these references do not sufficiently plead the existence of a property interest.  Accordingly, the plaintiffs have failed to plead a claim based on the denial of procedural due process based on the Code of Conduct.

This leaves the plaintiffs' claim that they have a due process right to avoid criminal prosecution.  In the absence of a specific violation of a federal constitutional right, such as the Fourth Amendment, a plaintiff may not bring a due process claim based on the "right to be free of prosecution without probable cause."  *Albright v. Oliver*, 510 U.S. 266, 812-13 (1994); *see also Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("there is no such thing as a constitutional right not to be prosecuted without probable cause")).  The due process claim based on the existence of the state court criminal proceedings is dismissed.

**3.      The "Illinois State University Law" and the "Chicago State University Law" (Count VI)**

The plaintiffs agree that they may only proceed with Count VI as to the individual defendants in their individual capacities. Thus, the official capacity claims in Count VI, as well as the claim against CSU in Count VI, are dismissed. The plaintiffs do not respond to the defendants' claim that the unspecified "Illinois State University Law" applies to Illinois State University. The plaintiffs do not direct the court's attention to a specific state statute and it is unclear how a statute relating to Illinois State University could be relevant here, given that the case is about actions taken by CSU employees. Thus, the "Illinois State University Law" portion of Count VI is dismissed.

With respect to the "Chicago State University Law," the complaint does not clearly identify what statute is at issue. The plaintiffs refer to 110 ILL. COMP. STAT. § 660/5-42. (Dkt. 1 at p. 33.) This section, promisingly, is part of the chapter entitled "Chicago State University Law." However, it provides that "[n]otwithstanding any other provision of this Law, any power granted under this Law to acquire property by condemnation or eminent domain is subject to, and shall be exercised in accordance with, the Eminent Domain Act." In their response, the plaintiffs sensibly abandon any claim based on eminent domain and articulate an entirely different set of allegations to support the relief sought in Count VI.

Generally, plaintiffs "may not amend [their] complaint in [their response" to a motion to dismiss. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011). However, they may include facts in a response brief "in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001). The new allegations are, in essence, an entirely new version of Count VI. This is impermissible. The defendants are

not required to identify the basis for the plaintiffs' "Chicago State University Law" claim and then respond to that claim. Count VI is dismissed. If the plaintiffs wish to pursue their "Chicago State University Law" claim, they must articulate that claim in an amended complaint.

**E.  Additional Arguments**

The parties' briefs often seem to be based on stream of consciousness. In future submissions, the parties are *very strongly encouraged* to group all of their arguments about a single count in one place and to use point-headings to set off each separate argument. In the interests of completeness, however, the court acknowledges several additional arguments made by the defendants.

First, the defendants argue that the plaintiffs may not receive relief based on events that did not happen to them, such as the decision to discontinue a student newspaper that was made before the plaintiffs began attending CSU. As a general matter, this is correct. To the extent that the plaintiffs wish to include background allegations, they must ensure that they are tied to claims that are properly before the court. They must also ensure that their requests for relief are tied to the counts in their complaints.

Second, the defendants assert that the plaintiffs' allegations fail to state a claim because they rest on inaccurate allegations. For example, the defendants take issue with plaintiff Preston's claim that he peacefully demonstrated following his suspension based on their allegation that Preston violated a state court restraining order by entering CSU property. This is a factual issue that cannot be determined at the motion to dismiss stage.

Finally, the defendants state, in a footnote, that due to the "length and breadth" of the complaint, they reserve the right to raise additional arguments later. (Dkt. 15 at 7 n.1.) They

may raise additional arguments at a later time only as permitted by the Federal Rules of Civil Procedure. The complaint's numerous allegations, while not "short and plain," Fed. R. Civ. P. 8(a)(1), are not grounds to file a series of Rule 12 motions.

**F.    Guidance for the Amended Complaint**

The plaintiffs are given leave to file an amended complaint, consistent with this order and counsels' Rule 11 obligations. They may reallege the claims that survive this opinion. They may also amend their claim for injunctive relief based on the state court criminal proceedings (not in a numbered count; any repleaded claim must be in its own count), their due process claim based on CSU's Code of Conduct (currently Count III), and their Chicago State University Act claim (currently Count VI).

When drafting the amended complaint, counsel is reminded that "the question . . . [is] 'not whether [the plaintiffs] will ultimately prevail.'" *Skinner v. Switzer*, 562 U.S. 521, —, 131 S.Ct. 1289, 1296 (2011) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Instead, it is whether the "complaint [is] sufficient to cross the federal court's threshold." *Id*. The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), as opposed to "an exposition of [their] legal argument." *Skinner v. Switzer*, 131 S.Ct. at 1296; *see also Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014) (holding that a complaint is sufficient if it gives "the defendants notice of the claims against them"). It is improper and unnecessary to provide the kind of minute factual details and argumentative assertions that are largely responsible for the inordinate length of the current complaint.

The court also notes that the claims that it dismissed without leave to replead are preserved for possible appeal. The plaintiffs need not and should not repeat them in the amended complaint.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [28] is granted in part and denied in part. Specifically, the motion to dismiss based on alleged IFP fraud is denied. With respect to the remainder of the defendants' motion, the following claims are dismissed:

- All claims for relief directed at non-party CSU.

- All official capacity claims for injunctive relief based on state law.

- All requests for non-prospective injunctive relief against individual defendants in their official capacities.

- The request to enjoin state court criminal proceedings.

- The due process claims (Count III) based on the state court criminal charges and CSU's Code of Conduct.

- All claims in Count IV (Ethics Act) except individual capacity claims against Watson, Cage, Henderson, and Marsh.

- All requests for relief in Count V (Press Act) except for the claims against defendants in their individual capacities.

- Count VI ("Illinois State University Law" and "Chicago State University Law").

- Count VII (breach of contract against the CSU trustees).

By February 17, 2015, the plaintiffs may file an amended complaint, consistent with this order and counsels' Rule 11 obligations, that realleges the claims that survive this opinion. They may also amend their claim for injunctive relief based on the state court criminal proceedings (not in a numbered count; any repleaded claim must be in its own count), their due

process claim based on CSU's Code of Conduct (currently Count III), and their Chicago State

University Act claim (currently Count VI). The defendants shall answer or otherwise plead by

March 15, 2015.


Date:   January 26, 2015                          _____/s/_____
                                                  Joan B. Gottschall
                                                  United States District Judge